## UNDERWOOD V. LAWRENCE COUNTY.

1. A stenographer duly appointed by a circuit judge under section 481, Comp. Laws, may be required by such judge to attend court regularly held by such judge in a circuit other than his own, whenever, in his judgment, public interests so demand.

2. When so attending and acting under the directions of such judge, he is attending and acting officially, and is entitled to mileage as provided in section 485.

(Syllabus by the Court. Opinion filed Oct. 2, 1894.)

Appeal from Circuit Court, Lawrence county. Hon. L. E. GAFFY, Judge.

Claim by Leonard Underwood against Lawrence county for mileage as court stenographer. His claim was dismissed by the board of commissioners, which decision was reversed by the circuit court, and the county appeals. Affirmed.

The facts are stated in the opinion.

*Joseph B. Moore,* for appellant.

*Frawley & Laffey,* for respondent.

KELLAM, J. Respondent is the official stenographer appointed by Hon. L. E. Gaffy, judge of the sixth circuit, under section 481, Comp. Laws. At the request of Hon. A. J. Plow-

man, judge of the eighth circuit, Judge Gaffy went to Lawrence
county, in the eighth circuit, to hold court for Judge Plowman,
to try cases in which Judge Plowman was disqualified to sit.
He directed respondent to accompany him as official stenog-
rapher.   He did so, and his compensation per diem was fixed
by the judge and allowed by the commissioners.   His claim for
mileage was disallowed.   The decision of the board of commis-
sioners was reversed by the circuit court, and this appeal pre-
sents the single question whether or not, under the condi-
tions named, respondent is entitled to mileage.   Neither side
has found any adjudication that it has considered helpful in
the solution of the question.   We presume there are none, and
that we are left to decide the question on our own notion of the
scope and design of the statute.   The statute referred to au-
thorizes each district (now circuit) judge to appoint a stenog-
rapher.   This law was passed by the territorial legislature in
1879.   It is a fact so well known as to be a proper subject of
judicial notice by this court that ever since its passage the dis-
trict judges of the territory and the circuit judges of the state
have constantly construed this law as allowing each judge,
when in his judgment the expedition or satisfactory adminis-
tration of public business would be advanced thereby, to take
with him the stenographer whom he has appointed, wherever
he was required to hold court.   While such construction of the
law, and the practice under it, would not be conclusive of its
correctness, it is a strong argument in its favor.   The law
nowhere forbids it, and there are many considerations sounding
in fairness to the judge, as a trial court, safety to litigants, and
consequently of public good, that go to support it.   Whenever
a trial judge is called upon to settle a bill of exceptions, he
must rely largely upon the correctness of the stenographer's
notes.   Judges are men, and, like others, have individual pecu-
liarities of thought, expression, and habits of business.   The
better the stenographer is acquainted with these, the more ex-
peditious and accurate will be his work, and the more readily

to be relied upon.    The practice is general now for the stenographer to take down, and thus preserve, the charge of the judge.    This is an important duty, and in justice to the judge, as well as to the litigants, the very words of the judge must be caught and written with extreme fidelity.    It is obvious that this can be done more correctly and expeditiously if the stenographer is acquainted with the manner, form, and rapidity of expression of the judge, and more safely and satisfactorily by the judge if he knows just how far he may depend upon the skill and speed of the stenographer.    Again, the trial judge would rarely be called upon to settle a bill of exceptions until some time after he had returned to his own circuit.    If the notes were taken by the reporter of the circuit in which the court was held, they would ordinarily be of no service to the judge, in determining what should be in the bill, unless somebody was to the expense of obtaining from such stenographer a translation of his notes, whereas, if the evidence were taken by the judge's own stenographer,—using this term for facility of expression, rather than accuracy,—the judge could readily call upon him to read from his notes such portions of the evidence or proceedings at the trial as were in dispute, and thus determine the questions without expense of money or time.

These considerations may not seem very important, and they could not be held to justify a construction of the law inconsistent with its terms; but they are facts and consequences so obvious that they may properly be considered as in the contemplation of the legislature in the making of this law, and so taken into account in our effort to ascertain what may and may not be done under the law.    Section 485 requires the stenographer to "proceed from county to county, or subdivision, where the district.courts are held, when required thereunto by such district judge."    This, without doubt, is intended primarily to define his duties in the circuit; but we are unwilling to hold that under no circumstances can he act officially in another circuit, in connection with the judge who appointed him, and who

is required to hold court in such other circuit. The fact that appellant allowed and paid respondent his per diem compensation is an admission that in their opinion respondent was then and there acting officially, else they could not properly have paid him from the public treasury. It is no answer to say that the board was controlled by the certificate of the judge fixing the amount due, for the judge was only to fix the amount due the stenographer when acting as authorized by and within the terms of the law. If respondent had no right or authority to act in that county, the certificate of the judge that he had worked so many days at so much per day would create no liability on the part of the county to pay. The legal liability to pay must first exist. Then the act of the judge supplements it, and fixes the amount to be paid. If the certificate of the judge establishes the duty of the board to allow and pay the compensation of respondent, it also establishes respondent's official character and service in that county, for on no other theory could such payment be justified. If respondent went there rightfully, and there acted rightfully as an official reporter, so as to entitle him to the per diem compensation of an official stenographer as provided by the statute, he was also entitled to the mileage provided by the statute. The right to the statutory compensation and the right to the statutory mileage rests upon the same basis.

Considering its purpose and its provisions, we think the most reasonable construction that can be put upon this law results in this: Upon the circuit judge rests the responsibility of determining whether, in going into another circuit to hold a term or try a particular case, the public business will be expedited, and all interests better served, by the attendance of the stenographer from his own circuit, and if he so determine, and direct the attendance of such stenographer, such attendance and service are official, and entitle him to mileage and compensation under the statute. The judgment of the circuit court is affirmed. All the judges concur.